TULIAU of Ta'u [and] TELEAI T. FOFO of Ta'u, Appellants

v.

IOSEFA F. SUNIA of Fagatogo, Appellee

No. 13-1962

High Court of American Samoa

Civil Jurisdiction, Appellate Division

[Matai Title: "Fofo" of Ta'u]

May 23, 1962

Aumoeualogo, counsel for Tuliau.
Ma'o, counsel for Teleai T. Fofo.
Muagututia F. Tuia, counsel for Iosefa F. Sunia.

MORROW, *Chief Justice.*

Iosefa F. Sunia filed his application with the Registrar of Titles to be registered as the holder of the matai name Fofo attached to the Village of Ta'u, Manua. Suega, Tuliau, and Teleai T. each filed an objection to the proposed registration, each of them becoming a candidate for the name. Suega withdrew as a candidate during the hearing in the trial court and ceased to be a party in the case.

The trial court awarded the Fofo name or title to Iosefa. Tuliau has appealed claiming that the court was in error in not awarding the title to him. And Teleai T. has also appealed claiming that the court erred in not awarding the title to him (Teleai T.). Both appeals are, in substance, grounded on the claim that the decision of the trial court in awarding the title to Iosefa was based upon findings of fact contrary to the evidence.

Section 933 of the A. S. Code, as amended, prescribes the law which the court shall follow in determining which one of opposing candidates for a matai name shall be registered as its holder. It reads as follows:

"Consideration Given by Court: In the trial of matai name cases, the High Court shall be guided by the following in the priority listed:

"(a) The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail;

859

"(b) The wish of the majority or plurality of those members of the family related by blood to the title;

"(c) The forcefulness, character, personality and capacity for leadership of the candidate;

"(d) The value of the holder of the matai name to the Government of American Samoa."

Section 213 of Chapter 5 (Judiciary and Judicial Procedure) of Amendments, Nos. 11–59 to the A. S. Code provides that "The findings of the Trial and Probate Divisions of the High Court shall not be set aside by the Appellate Division of that court *unless clearly erroneous.* (Emphasis ours)...."

We shall consider the appeal of Teleai, first.

Teleai does not claim that the trial court was in error when it found that Teleai prevailed over Iosefa on the issue of hereditary right. We will, therefore, put the finding on that issue as respects Teleai and Iosefa to one side.

We do not believe in the light of the testimony of Teleai himself that there was any error in the trial court's finding that Iosefa prevailed over Teleai on the issue of the wish of the majority or plurality of those members of the family related by blood to the title. There were 530 signatures on the petition for Iosefa and 200 on the petition for Teleai.

The record of the testimony in the trial court shows that Teleai testified as follows:

"Q  I hand you here Applicant's Exhibit No. 2, which is the petition for Iosefa. Will you examine it and state if you have any objection to any of the names on it and, if so, what your objections are?

"A  I object to only 83 signers in Iosefa's petition.

"Q  Then is the Court to conclude that the remaining 447 in Iosefa's petition are blood members of the Fofo Family?

"A  Yes."

Iosefa testified that 150 of the 200 on Teleai's petition were not blood members, while Tuliau testified that 140 of

the 200 were not. When Teleai told the Court that 447 on Iosefa's petition were blood members, it follows that if his testimony on this point is to be believed (and we do not question it), then granting (but without agreeing) that every one of the 200 on Teleai's petition were blood members, it necessarily follows that as between Teleai and Iosefa that Iosefa prevailed over Teleai on the issue of the wish of the majority or plurality of those members related by blood to the title.

In the light of Teleai's own testimony, it is clear that the trial court did not err when it found that Iosefa prevailed over Teleai on the second issue. The trial court found in accordance with Teleai's own testimony, and we cannot say in view of that undisputed fact that the finding was clearly erroneous. We have no reason to believe that Teleai misled the court when he testified that 447 on Iosefa's petition were blood members.

The evidence before the trial court was to the effect that Iosefa is 24 years old, a graduate of the Samoan High School, and that he holds a Bachelor of Arts degree from the University of Hawaii. The evidence showed that Iosefa is an industrious person and that he worked his way through the University of Hawaii. He did some graduate work after securing his degree and then returned to Samoa where he was appointed Administrative Assistant to the Director of Samoan Affairs at a salary of about $3,000 a year. He obviously made good in this position, since he has held it for more than a year. He is senior officer of the Boys' Brigade in Fagatogo and teaches a Bible class in leadership. When the Director of Samoan Affairs recently went to Swains Island, Iosefa handled the affairs of the Director's office. The evidence showed that Iosefa has about three acres of plantations in Tutuila and that he does not have to rely on financial help from aiga. Iosefa,

being a graduate of the University of Hawaii, speaks English very well.

Teleai is 45 years old. He completed the 7th grade in school and speaks a little English. He served in the Samoan Marines during the war and after the war was over he attended the vocational school for veterans for one-and-a-half years, but he did not graduate. He has rendered service to the Faumuina title in Manua. His plantations are on Faumuina land, but he has no plantations on Fofo land. He studied carpentry while in the vocational school. He occasionally, along with eight others, does some carpentry work in Manua, and he worked on a house in Masefau. According to his testimony, he sells from $170 to $200 worth of copra a year and received $50 and some fine mats and tapas for carpenter work in 1961; also that he received about $10 for taro in 1961. He has some cocoa trees and will sell cocoa when the trees begin to bear. He gets a little financial help from his brother in the States—about $20 every two months. He sold a pig for $40 in 1961.

It was argued by his counsel on appeal that the trial court should have awarded the title to Teleai because he lives in Manua, whereas Iosefa does not, although the evidence was to the effect that Iosefa does go to Manua occasionally.

■ A careful examination of Section 933, quoted supra, shows that there is no requirement that a matai live in the village to which his title is attached. It is common knowledge that a number of matais from Manua live in Tutuila, going to their villages in Manua only occasionally.

The trial court observed the personalities of the candidates during the trial, which lasted six days.

We cannot say, particularly in view of Iosefa's very much superior education and the further fact that he holds

862

a very responsible position in the Government, that the court's finding that Iosefa prevailed over Teleai on the third issue was erroneous. We think the court could not, in the light of the evidence before it, have reached any other conclusion. The fact that Iosefa went to Honolulu, worked his way through the University of Hawaii, and returned to Samoa and made good in a responsible and important Government post is indicative of drive and force. And it takes more drive and force for a student to go to Honolulu, work his way through the University of Hawaii, return to Samoa and hold down a responsible Government position successfully than it does to go to a vocational school in Utulei with his way paid and quit before graduation, as did Teleai.

It is common knowledge that the President of the United States, the members of his Cabinet, the justices of the Supreme Court of the United States, and most of the members of the United States Congress are college graduates, while at the same time it is also a fact that only a small percentage of the whole population of the United States are college graduates.

While a college education is not a guaranty of capacity for leadership, yet it is not just an accident that a very large percentage of our leaders come from the relatively small group of our people who are college graduates. It is not just an accident that every governor of American Samoa since the Department of the Interior took over the administration of American Samoa in 1951 has been a college graduate; and that all the prior governors since the establishment of the Government in 1900 were graduates of the United States Naval Academy, which provides a training for its graduates equivalent to a college education.

We think that the evidence showed that Iosefa has a much greater capacity for leadership than Teleai and

primarily for that reason he will be of greater value to the Government as the holder of the Fofo title than will Teleai. We conclude that, in the light of the evidence, the Court did not commit error when it found that Iosefa prevails over Teleai on the issue of value to the Government.

We think that the evidence fully supported the finding of the trial court that Iosefa prevailed over Teleai on the second, third, and fourth issues, and that pursuant to the statute the trial court very properly gave more weight to the second, third, and fourth issues combined than it did to the first issue relating to hereditary right.

We shall now consider the appeal of Tuliau. It is claimed by Tuliau that Iosefa has no Fofo blood and that Tuliau prevails over Iosefa on the first issue. The trial court found that Tuliau's claim of $1/32$ Fofo blood was correct and that Iosefa had $1/8$ Fofo blood and prevailed over Tuliau on this issue. We have reviewed the evidence on this issue, and it is our conclusion therefrom that the finding of the trial court to the effect that Iosefa has $1/8$ Fofo blood, being the great-grandson of Fofo Manu II, is supported by the weight of the evidence. Tuliau only claims $1/32$ Fofo blood.

In the first place, it is unthinkable to anyone familiar with the matai system that 447 blood members of the Fofo Family would have signed the petition for Iosefa if he had had no Fofo blood and were a stranger to the title. Teleai testified that 447 of the signers on Iosefa's petition were blood members.

Iosefa testified that he is the great-grandson of Fofo Manu II. It was claimed in argument on appeal that Manu did not hold that Fofo title because page 37 of a family record produced by Iosefa did not show that Fa'ala'a held the title Fofo (Fa'ala'a and Manu were the same person). However, the trial record shows that counsel for Tuliau, when cross-examining Iosefa, made no effort to find out

what was on page 40 of the family record in response to the witness' statement to him that: "However, on page 40, I believe you will find it much more clearer and correct genealogy. I think it is easier to read than the material on page 37." The fact that page 37 did not show that Fa'ala'a held the Fofo title does not prove at all that he did not. Some other page, such as page 40, might have shown that he did.

We now quote from the record in the trial court, Logo, counsel for Tuliau, questioning Iosefa:

"Q   So when did the Fofo Manu hold the title Fofo; was it after the Government was established or before the Government was established?

"A   Are you referring to Manu II?

"Q   Yes, the same man as Fa'ala'a?

"A   He held the title before the Government came here."

This cross-examination speaks for itself and indicates that even the cross-examiner himself considered that there was a Fofo Manu and that Fa'ala'a, the great-grandfather of Iosefa, and Fofo Manu were one and the same person.

█ It is true that Tuliau while on the witness stand asserted that Iosefa had no Fofo blood. However, in view of the fact that Tuliau filed a petition permeated with fraud (as will later appear), made contradictory statements on the witness stand as to the genuineness of his signature on some of the documents introduced in evidence, we do not believe that his testimony to the effect that Iosefa did not have Fofo blood is entitled to much weight. His credibility as a witness was greatly weakened by these two facts.

The trial court did not make any finding as to whether the majority or plurality of those members of the Fofo Family related by blood to the title favored Tuliau or Iosefa. The record shows that the petition filed by Tuliau contained the names of two dead people, many forgeries,

names of people in the United States who could not possibly have signed in Samoa where the petition was prepared. It contained names of children under 14 years of age, names of people who did not know what they were signing. In some instances, both husband and wife signed. There were 1684 signatures on Tuliau's petition. However, the evidence clearly showed that many of them did not have Fofo blood although Tuliau testified that all of them did.

In view of the evidence with respect to the other issues, we agree with the trial court that it was not necessary for it to make a finding on the issue of the majority or plurality of the family as between Iosefa and Tuliau.

Tuliau is 45 years old. He completed the 6th grade in the faifeau's school and graduated from the 9th grade in junior high school. He speaks English fairly well. He has worked on family plantations and rendered service both to his matai and the village. During the war he worked as a laborer in Tutuila. He worked as an agricultural extension agent in Manua in 1956–57. For a few days in 1960 he worked as a census enumerator. In 1961 he went to work again as an agricultural extension agent in Manua, for which he receives a salary of approximately $63.00 a month. He sells copra, bananas, cocoa, yams and taro for which he receives $175 to $200 a year. He received about $50 for carpenter work in 1961. Tuliau is helped some financially by aiga in the States who send him $15 to $20 a month. Tuliau received the Tuliau title in 1961.

In the consideration of the appeal of Teleai, we have already set out the evidence bearing upon the forcefulness, character, and capacity for leadership of Iosefa. It is not necessary to repeat it here. We think in the light of the evidence that the trial court was not in error when it held that Iosefa, a university graduate who holds a very responsible position in the Government, prevails over Tuliau on the third issue. We think that the weight of

evidence on this issue was clearly in favor of Iosefa.

The High Court has frequently said that the value of the holder of a matai title to the Government depends in a large measure upon his capacity for leadership. *Toatolu et al. v. Laumea*, No. 51-1961 (H.C. of Am. S.). The very fact that Iosefa had the energy and drive necessary for him to work his way through the University of Hawaii, return to his homeland and successfully fill a responsible position with the Government as Administrative Assistant to the Director of Samoan Affairs is a clear indication of forcefulness and capacity for leadership.

Considering the evidence in favor of Tuliau on this fourth issue, it is our conclusion that the trial court was not in error when it found that Iosefa prevailed over Tuliau on the issue of value to the Government.

It is our conclusion that the trial court did not make any erroneous finding of fact when it found that Iosefa prevailed over Tuliau on the first, third, and fourth issues.

## ORDER OF AFFIRMANCE

IT IS HEREBY ORDERED that the decree of the Trial Division awarding the matai name Fofo, attached to the Village of Ta'u, to Iosefa in the case of *Suega, Teleai T. Fofo, and Tuliau v. Iosefa F. Sunia*, No. 4-1962 (H.C. of Am. S.) be and the same is hereby affirmed.

The Registrar of Titles will be advised of this Order of Affirmance.

Costs in the sum of $10.50 are hereby assessed against Tuliau and Teleai, each of them to pay $5.25 within 30 days.